# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LaPRECE D.,[1] <br> Plaintiff, <br> v. <br> ANDREW SAUL,[2] <br> Commissioner of Social Security, <br> Defendant. | Case No. 2:19-cv-01263-AFM <br><br> **MEMORANDUM OPINION AND ORDER REVERSING AND REMANDING DECISION OF THE COMMISSIONER** |

Plaintiff filed this action seeking review of the Commissioner's final decision denying her application for disability insurance benefits. In accordance with the Court's case management order, the parties have filed memorandum briefs addressing the merits of the disputed issues. The matter is now ready for decision.

///

///

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul, Commissioner of the Social Security Administration, is substituted as the proper defendant in this action. See Fed. R. Civ. P. 25(d).

# BACKGROUND

In September 2015, Plaintiff applied for disability insurance benefits, alleging disability since August 14, 2015. Her application was denied initially and on reconsideration. (Administrative Record ["AR"] 94-100, 102-107.) A hearing took place on July 19, 2017 before an Administrative Law Judge ("ALJ"). Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified at the hearing. (AR 40-60.)

In a decision dated December 1, 2017, the ALJ found that Plaintiff suffered from the medically severe impairments of osteoarthritis and inflammatory arthritis (AR 29). The ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform a range of sedentary work. Specifically, the ALJ determined that Plaintiff could stand and/or walk for four hours in an eight-hour workday; could sit for six hours in an eight-hour workday; could lift no more than 10 pounds at a time; could occasionally lift or carry articles like docket files, ledgers, and small tools; could occasionally perform most postural activities; could frequently perform handling and fingering tasks; and must avoid moderate exposure to extreme cold, unprotected heights, and moving machinery. (AR 30.) Relying on the testimony of the VE, the ALJ concluded that Plaintiff could perform her past relevant work as a customer service representative and office manager. (AR 33.) Accordingly, the ALJ concluded that Plaintiff was not disabled. (AR 33-34.) The Appeals Council subsequently denied Plaintiff's request for review (AR 9-14), rendering the ALJ's decision the final decision of the Commissioner.

# DISPUTED ISSUES

1. Whether the ALJ properly evaluated the medical opinions of Plaintiff's treating physician.
2. Whether the ALJ erred in his RFC assessment.
3. Whether the ALJ improperly rejected Plaintiff's subjective complaints.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

**DISCUSSION**

**I.    Relevant Medical Evidence**

<u>Plaintiff's Treating Physician</u>

Martin Berry, M.D., treated Plaintiff from August 2014 to April 2017. Dr. Berry diagnosed Plaintiff with rheumatoid arthritis and "general fatigue-tiredness." (AR 271-290, 326, 416-430.) From August 2014 through November 2015, Dr. Berry's physical examination revealed moderate tenderness over the metatarsophalangeal joints, some synovitis in wrists and ankles, scattered mild swelling of the proximal interphalangeal joints, moderately decreased range of motion in wrists, a loss of several degrees of extension in the left elbow, and mild puffiness of both knees. (AR 271, 273, 277, 279, 281, 283, 285, 289, 426, 428-429.)

On November 12, 2015, Dr. Berry completed a "Medical Source Statement-Physical" evaluation. Dr. Berry noted Plaintiff's prognosis was "fair to poor," and indicated that her symptoms were pain, stiffness, fatigue, and difficulty/pain with

walking, she had constant and "severe pain" in her knees, wrists, and fingers that is increased with activity. (AR 326.) In Dr. Berry's opinion, Plaintiff could: stand/walk 0-2 total hours in an 8-hour workday; sit 0-2 total hours in an 8-hour workday; rarely lift up to 20 pounds and occasionally lift less than 10 pounds; rarely crouch/squat and climb ladders; occasionally stoop and climb stairs; use her hands for grasping, turning, and twisting objects and use her fingers for fine manipulation 50% of the time in an 8-hour workday; and use her arms for reaching 30% of the time in an 8-hour workday. (AR 327.) In addition, Dr. Berry opined that Plaintiff "constantly" has pain or other symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks and would likely miss work more than four days per month due to her impairments or treatment for those impairments. (AR 328.)

After he completed the Medical Source Statement, Dr. Berry continued to see Plaintiff every three months. In January 2016, Dr. Berry noted that Plaintiff was pleased that she had made some ongoing improvement. After taking two doses of Rituxan, Plaintiff reported less pain and stiffness and that she was able to function. (AR 426.) In April 2016, Dr. Berry's examination findings revealed "some pain with full abduction and internal and external rotation." He indicated that Plaintiff's rheumatoid arthritis was "in excellent remission." (AR 424-425.) Treatment notes from June 2016 reflect Plaintiff's complaints of pain in her neck, lower back, right hip, knees, ankles, feet, and right toe. Physical examination revealed "low-grade synovial thickening over the wrists and metacarpophalangeal joints." Dr. Berry noted that Plaintiff's rheumatoid arthritis was "under fair control." (AR 422-423.) In September 2016, Plaintiff exhibited "minimal to absent synovitis" on examination. (AR 420-421.) In January 2017, Plaintiff reported that she was doing well on Rituxan, indicating that she had less pain and stiffness, but still had "significant difficulty." (AR 418.) In April 2017, Plaintiff continued to complain of pain in her wrist, ankles, feet, knees, and lower back. She reported feeling like her disease is "controlled."

4

Dr. Berry's notes indicate that Plaintiff has "good days and bad days but all in all she has not had any major clinical progression of her arthritis." In addition, Plaintiff told Dr. Berry that she was "busy taking care of her house," and she had been doing "a lot of the yard work and sometimes overdoes it." Physical examination revealed "very mild synovial thickening over the metacarpophalangeal joints." Dr. Berry assessed Plaintiff with rheumatoid arthritis of the right and left hands without organ or system involvement, with positive rheumatoid factor. He noted Plaintiff's arthritis was "in good remission." (AR 416-417.)

Consultative Examination

Plaintiff underwent a consultative examination in December 2015 with Roger Wagner, M.D. Dr. Wagner noted that Plaintiff primarily complained about problems in her ankles, knees, wrists, and "some in the hands." (AR 330.) Physical examination revealed that Plaintiff had some stiffness and decreased range of motion in the upper extremities. While Plaintiff had mild swelling in both hands, she demonstrated good dexterity and good grip strength. She was able to make a tight fist. Dr. Wagner found moderate to severe arthritic changes in the wrists with decreased range of motion. Plaintiff could easily oppose fingertips to thumb tips and pick up a paperclip. Plaintiff's right knee had mild swelling and was slightly warm. Her left knee had moderate swelling and a likely small effusion. Neither knee had ligamentous laxity or obvious crepitus. There was mild tenderness and decreased range of motion. Plaintiff also had mild swelling about the ankles. Her motor strength, muscle bulk and tone were normal in all extremities. Dr. Wagner observed that Plaintiff was able to get off and on the exam table easily, walk at a normal speed without assistance, easily bend at the waist to take off and put back on her shoes and socks, thereby demonstrating good dexterity and flexibility. (AR 330-334.)

Plaintiff told Dr. Wagner that she climbed stairs using the railing and she used a walking stick if she went on a long walk. She lived with her husband and performed the cooking and cleaning. She also was able to drive, shop, and perform her own

activities of daily living without assistance. Plaintiff was doing some physical therapy and water aerobics for exercise. (AR 331.)

Dr. Wagner diagnosed plaintiff with rheumatoid arthritis with effects on the wrists, hands, ankles, knees, and other joints, and knee pain with swelling consistent with rheumatoid arthritis. He opined Plaintiff could stand/walk up four hours in an eight-hour day; could sit up to six hours in an eight-hour day; needed a walking stick for walking long distances; could lift/carry twenty pounds occasionally and ten pounds frequently; could climb, stoop, and crouch occasionally; could reach, handle, and finger occasionally to frequently; and she should avoid very cold temperatures. (AR 334-335.)

<u>State Agency Physicians</u>

The ALJ noted the State agency reviewing physicians' opinions of Plaintiff's RFC essentially agreed with Dr. Wagner's opinion. (AR 31.) As relevant here, the State agency physicians' opinions differed from Dr. Wagner's in that they concluded that Plaintiff had no limitations in reaching. They also concluded that Plaintiff could perform handling and fingering frequently, which, as discussed below is not necessarily inconsistent with Dr. Wagner's opinion. (AR 71, 85.)

**II.    The ALJ's consideration of the treating physician's opinion**

Plaintiff contends that the ALJ failed to provide legally sufficient reasons for rejecting the opinions of Dr. Berry.

**A.  Relevant Law**

The medical opinion of a claimant's treating physician is entitled to controlling weight so long as it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). If a treating or examining physician's medical opinion is uncontradicted, the ALJ may only reject it based on clear and convincing reasons. *Trevizo*, 871 F.3d at 675; *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating or examining

physician's opinion is contradicted, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record before rejecting it. *Trevizo*, 871 F.3d at 675; *Ghanim v. Colvin*, 763 F.3d 1154, 1160-1061 (9th Cir. 2014). Even when a treating physician's opinion is not controlling, the ALJ must still weigh it according to factors such as the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. *Trevizo*, 871 F.3d at 676; *see* 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo*, 871 F.3d at 675 (citations and internal quotation marks omitted). Because Dr. Berry's opinions were contradicted by the opinions of Dr. Wagner and the State agency physicians, the ALJ was required to provide specific and legitimate reasons for rejecting them.

**B. Analysis**

In assessing the weight of the medical opinions, the ALJ began by observing that Dr. Wagner and the State Agency physicians agreed regarding "the essentials of the residual functional capacity assessment" – namely, with respect to Plaintiff's ability to stand/walk, sit, and to lift/carry. The ALJ noted "some differences" in their opinions regarding postural and manipulative restrictions, but explained that in reaching his RFC determination he "adopted those that best fit [Plaintiff's] condition." (AR 31-32.)

The ALJ apparently misattributed Dr. Berry's opinion to Barry Eibschutz, M.D.[3] (AR 32.) In setting out the opinion, the ALJ explained that the doctor had "checked boxes" indicating that, among other limitations, Plaintiff needed a cane or assistive device when engaged in occasional standing/walking; could stand/walk zero

---

[3] Dr. Eibshutz saw Plaintiff on four occasions to administer Rituxan injections. (AR 319-320, 402-404.)

7

to two hours; could perform fine manipulations 50% of an eight-hour workday; could perform reaching 30% of an eight-hour workday; suffered from anxiety that would interfere constantly with the attention and concentration needed to perform even simple work tasks; and would miss more than four days of work per month. (AR 32.) In addressing the weight to assign this opinion, the ALJ explained:

> The undersigned has given this opinion little weight, as the claimant's daily activities far exceed the extreme limitations described by Dr. Eibschutz. She does not use a cane when occasionally standing or walking; she uses only a walking stick and uses that only for long walks. She can drive an automobile without anxiety interfering, she can cook meals, mow a lawn, use a weed-eater and a blower despite any mental condition. She is not seeking mental health care, and has said she does not have any mental condition that interferes with her life. In addition to the yard work, she was able to help her parents move, and has been able to enjoy longs walks and dancing. Many of her activities meet or exceed simple repetitive tasks, and anxiety has not interfered with these activities. For these several reasons, the undersigned has given other opinions much greater weight than is given this opinion of Dr. Eibschutz.

(AR 32-33.)

Plaintiff argues that the ALJ erred by failing to consider the factors relevant to weighing a treating physician's medical opinion – namely, the length of treatment, frequency of examination, the specialization of the treating physician, whether the opinion was supported by the physician's treatment records, and whether it was consistent with the record as a whole. Relying on the Ninth Circuit's decision in *Trevizo*, Plaintiff argues that "[th]is failure alone constitutes reversible error." (ECF No. 20 at 8-9, citing *Trevizo*, 871 F.3d at 676.)

While *Trevizo* held that an ALJ is obligated to consider the relevant factors set forth in 20 C.F.R. § 404.1527(c)(2)-(6), courts have concluded that *Trevizo* does not require an ALJ to explicitly address each relevant factor in his written decision. *See Kelly v. Berryhill*, 732 F. App'x 558, 563 n.4 (9th Cir. 2018) ("an ALJ is not required to make an express statement that she considered all the factors outlined in in 20 C.F.R. § 404.1527(c)"). Rather, *Trevizo* "merely requires some indication that the ALJ considered them." *Lisa R. S. H. v. Berryhill*, 2018 WL 3104615, at *5 (C.D. Cal. June 21, 2018) (quoting *Hoffman v. Berryhill*, 2017 WL 3641881, at *4 (S.D. Cal. Aug. 24, 2017), *report and recommendation adopted*, 2017 WL 4844545 (Sep. 14, 2017)); *see Kelly*, 732 F. App'x at 563 n.4.

Here, despite carefully reading the ALJ's decision in search of evidence suggesting that he considered the relevant factors, the Court cannot find any. To begin with, perhaps due to the ALJ's misattribution of the opinion, the ALJ did not cite or discuss Dr. Berry's treatment notes when considering Dr. Berry's opinion. Indeed, the ALJ mentions but a few of Dr. Berry's treatment notes, and even then, he does so primarily to reference statements Plaintiff made which the ALJ found undermined her credibility. (*See* AR 32, noting that Plaintiff told Dr. Berry that she felt her disease was controlled, was taking care of her house and doing a lot of yard work). Moreover, it is not evident from the ALJ's decision that he knew, let alone considered, that the opinion he rejected was rendered by a physician who specializes in rheumatology (as opposed to Dr. Wagner, who is an internist) or that it was rendered by a physician whose treating relationship with Plaintiff extended for nearly three years (as opposed to one visit with Dr. Wagner and none with the State agency physicians). The fact that the ALJ did not refer to Dr. Berry's treatment notes when discussing Dr. Berry's opinion suggests that the ALJ did not simply make a typographical error in attributing the opinion to Dr. Eibschutz, but that he did not recognize the opinion belonged to Dr. Berry at all. Because Dr. Eibschutz's specialization and relationship with Plaintiff was drastically different than her

relationship with Dr. Berry, it is impossible to conclude that the ALJ considered the appropriate relevant factors. Furthermore, nothing in the discussion of the opinion or the remainder of the ALJ's opinion suggests that he considered whether Dr. Berry's opinions were supported by his treatment records or were consistent with the medical records as a whole.

Because the Court concludes that the ALJ did not consider the relevant factors before rejecting Dr. Berry's opinion, reversal is warranted. *See Kelly*, 732 F. App'x at 563 n.4 (reversing ALJ decision where it "gives no indication that the factors [in 20 C.F.R. § 404.1527(c)] were properly considered, other than a cursory acknowledgment of Dr. Ratcliffe as Kelly's treating physician. Indeed, the fact that the ALJ appears to have mistaken an examining psychologist's treatment note for one of Dr. Ratcliffe's medical opinions strongly indicates that the ALJ did not give Dr. Ratcliffe's opinions the careful consideration owed to them under the regulations."); *Trevizo*, 871 F.3d at 676 ("the ALJ did not consider factors such as the length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship, or the supportability of the opinion, …. This failure alone constitutes reversible legal error."); *Juan C. P. v. Saul*, 2019 WL 6039944, at *4 (C.D. Cal. Nov. 14, 2019) (reversing decision based upon ALJ's failure to consider some of the relevant factors in assessing treating physician opinion, stating "it does not appear that [the ALJ] considered any other relevant factor in giving the consulting sources controlling weight. If he had, he might have noted the long-term treating relationship between plaintiff and Dr. Ahmed, Dr. Ahmed's specialization, and the fact that his opinions were supported by" MRI results).

The Commissioner does not address Plaintiff's contention that reversal is warranted under *Trevizo*. Instead, the Commissioner argues that the ALJ properly rejected Dr. Berry's opinions because he provided specific and legitimate reasons for doing so. Assuming, without deciding, that a failure to consider the relevant factors in weighing a treating physician's opinion can be considered harmless if an ALJ

provides legally sufficient reasons for rejecting that opinion, the ALJ did not do so here.

First, the Commissioner contends that the ALJ properly rejected Dr. Berry's opinions because they "stand in contrast to both the consultative and State agency opinion, as well as Dr. Berry's notes on Plaintiff's own reports about her condition…." (ECF No. 22 at 8.) The mere fact that a treating physician's opinion is contradicted by the opinion of another physician, however, is not itself a sufficient reason to reject it. Instead, the existence of contradictory opinions simply means that the ALJ must provide specific and legitimate reasons (as opposed to clear and convincing reasons) for rejecting it. *See Juarez v. Astrue*, 2011 WL 488655, at *3 (C.D. Cal. Feb. 9, 2011) (rejecting Commissioner's argument that the mere fact of the inconsistency between a treating physician and a consultative examiner is sufficient basis upon which to reject the opinion of the treating physician).

The Commissioner is correct that an ALJ may properly reject a treating physician opinion if the opinion is contradicted by the physician's own treatment notes. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (contradiction between treating physician's assessment and clinical notes justifies rejection of assessment). Nevertheless, even generously reading the ALJ's decision, the Court cannot find any support for the conclusion that the ALJ made such a finding. To the contrary, the ALJ failed to discuss any medical evidence in relation to Dr. Berry's opinions and made no clear finding that the opinions lacked support in the medical record. While a reviewing court may draw legitimate inferences from an ALJ's decision, it cannot speculate on the ALJ's reasoning or make "post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-1226 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ – not post

hoc rationalizations that attempt to intuit what the adjudicator may have been thinking").

Second, the Commissioner contends that the ALJ properly rejected Dr. Berry's opinions because they were inconsistent with Plaintiff's daily activities. (*See* AR 32-33.) An inconsistency between a physician's opinion and a claimant's daily activities may constitute a proper reason to reject a treating physician's opinion if it is provided with the required specificity and explanation. *See Ghanim*, 763 F.3d at 1162. Here, however, the ALJ failed to explain which of Plaintiff's listed activities he considered to be inconsistent with which specific portion of Dr. Berry's opinion. Indeed, the ALJ's analysis focuses primarily upon his finding that Plaintiff is able to drive, cook, mow the lawn, help her parents, and walk "without anxiety interfering." (AR 32-33.) Furthermore, it is not evident how Dr. Berry's opinion that Plaintiff's rheumatoid arthritis precludes her from reaching, fingering, and handling more than 30 to 50 percent of a workday is inconsistent with Plaintiff's abilities to perform the aforementioned daily activities – most of which appear to be activities of short duration. Thus, without more, the ALJ's reliance on Plaintiff's daily activities does not constitute a specific and legitimate reason for rejecting Dr. Berry's opinion. *See Trevizo*, 871 F.3d at 676 (ALJ erred in relying on daily activities to reject physician opinion where it was not clear from the record "the extent to which and the frequency with which Trevizo picked up the children, played with them, bathed them, ran after them, or did any other tasks that might undermine her claimed limitations").

An ALJ's failure to properly evaluate a treating physician's opinion may be harmless error when a reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the [opinion], could have reached a different disability determination." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (*quoting Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-1056 (9th Cir. 2006)). Crediting some or all of the opinions of either Dr. Feldman or Dr. Berman would likely have affected the ALJ's RFC and, consequently, the hypothetical posed to the VE. *See*

*Ghanim*, 763 F.3d at 1166. Accordingly, the Court cannot conclude that the ALJ's error was harmless.

## REMEDY

Ninth Circuit case law "precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016) (citations omitted). "The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. . . . If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." *Dominguez*, 808 F.3d at 407 (citation and internal quotation marks omitted).

Although the Court has found error as discussed above, the record on the whole is not fully developed, and factual issues remain outstanding. The issues concerning Plaintiff's alleged disability "should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance." *See Brown-Hunter v. Colvin*, 806 F.3d 487, 496 (9th Cir. 2015); *see also Treichler*, 775 F.3d at 1101 (remand for award of benefits is inappropriate where "there is conflicting evidence, and not all essential factual issues have been resolved") (citation omitted); *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (same where the record does not clearly demonstrate the claimant is disabled within the meaning of the Social Security Act).

Accordingly, the appropriate remedy is a remand for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).[4]

///

///

///

///

---

[4] It is not the Court's intent to limit the scope of the remand.

IT IS ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this opinion.

DATED: 2/7/2020

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE